IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TRACY E. WADE, Administratrix of the
Estate of RICHARD BRIAN WADE,

          Plaintiff,

v.                                        CIVIL ACTION NO. 3:12-0608

UNITED STATES OF AMERICA,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court conducted a bench trial in this matter on February 11 and 12, 2013. For the reasons stated on the record and as explained below, the Court **GRANTS JUDGMENT** in favor of Defendant.

Plaintiff Tracy E. Wade, Richard Brian Wade's wife, filed this lawsuit as administratrix of the estate of Mr. Wade against the United States, the government entity with jurisdiction and control over the Huntington VA Medical Center. She alleges that the Huntington VA Medical Center was negligent in its medical treatment of Mr. Wade and that Mr. Wade died as a direct and proximate result of that negligence. She seeks compensatory damages for economic and non-economic losses, punitive damages, costs and fees. The parties are in agreement that Plaintiff's success on her claims hinges solely on the actions of Certified Nurse Practitioner Patricia C. Wright, namely, whether Ms. Wright failed to meet the standard of care in her treatment of Mr. Wade on March 10, 2011, by not timely diagnosing and treating Mr. Wade's heart condition.

1

Plaintiff's lawsuit is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA allows for lawsuits related to the alleged medical negligence of government entities:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). A plaintiff is required to provide proper notification to the appropriate government entity and to exhaust all administrative remedies before seeking relief under the FTCA. The parties do not dispute that these conditions have been met here.

The issue of whether a plaintiff succeeds under the FTCA depends on the application of state law, as state law—not federal law—dictates the elements of the claim. *United States v. Muniz*, 374 U.S. 150, 153 (1963) ("Whether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law . . . ."). The state law that governs Plaintiff's claim is found in part in the West Virginia Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 to -12. The Act states as follows:

> The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3(a).

**Findings of Facts**

On March 8, 2011, Richard Brian Wade, Plaintiff's decedent, experienced what seems in retrospect to have been a significant but short episode of chest pain radiating into his left arm while he was working in his garage. He became diaphoretic with chest pain and shortness of breath. As a result, he called the Huntington VA Medical Center the next day, on March 9, 2011, to schedule an appointment at the facility's primary care clinic. A screening interview took place by telephone, resulting in a medical record which was included in Joint Exhibit 1 filed by the parties. During that call, he was transferred to a triage nurse, Ms. Shortt, with whom he discussed the reason for seeking an appointment. In the record of this telephone call, Nurse Shortt noted that Mr. Wade's chief complaint was "Numbness of the Arms (Bilateral)," which he had been experiencing for "2 months." Mr. Wade attributed this problem to his computer work at the United States Army Corps of Engineers, reporting that he had "pain in both hands and wrists" which he noticed only with a certain position of his hands and wrists. The chart entries for this telephone contact identify this discomfort as the only "positive" indication, and specifically noted as "negative" a list of other current symptoms and past medical history. There was no notation that he mentioned any chest pain or any symptoms other than his hands and fingers. He requested to be seen as soon as possible and was scheduled for an appointment on March 10, 2011.

Mr. Wade went to the Huntington VA on March 10, 2011, and spoke with a primary care nurse, Ms. Hurn. During his assessment by Nurse Hurn, the record of which was admitted as part of Joint Exhibit 1, Mr. Wade mentioned that he experienced chest pain in the past but was not experiencing such pain during the visit. The chart listed two matters under the heading of

3

"anything new you want your provider to know about today": "new vet presents today to establish PPC" and "C/O chest pain @ times none now." Nurse Hurn checked his blood pressure twice along with other typical vital signs and took a medical history, identifying "HPL, anxiety, back pain and hearing loss" as past medical problems. Based on this part of the chart, it seems that he was asked a number of questions, but none involving his complaint of chest pain. This assessment was completed about 12:35 p.m. that day.

     Mr. Wade then met with Certified Nurse Practitioner Patricia C. Wright for an examination. Like the other nurses, Ms. Wright charted her contact with him. According to that record, Mr. Wade was reported to have "C/O episodic chest pain, none at this time" which was described as "non-radiating pain, sits behind sternum only." He reportedly stated that he believed it was stress related. He informed the nurse that he had these symptoms over the "past three years" but an "extensive workup at that time" had revealed nothing. His history included hyperlipidemia, tobacco use, and a family history of coronary problems. He denied any chest pain, shortness of breath, or palpitations during this exam. The nurse noted, under musculoskeletal complaints, "episodic pain" in joints and "episodic numbness of hands/fingers bil," presumably bilaterally. Additionally, he stated that he had some fatigue which he associated with working a swing shift and not sleeping well. Ms. Wright ordered lab work, an EKG, and a chest x-ray. The results of the EKG and chest x-ray performed that day appeared normal. Other than elevated cholesterol, Mr. Wade's lab work that day was also normal. Ms. Wright also requested that Mr. Wade undergo a stress test. Ms. Wright was not responsible for scheduling stress tests; instead, her request was sent to a cardiologist responsible for scheduling tests, who scheduled it for March 21, 2011. At the conclusion of the examination, Ms. Wright instructed

Mr. Wade that he should go to the emergency room if he experienced any chest pain in the future.

Mr. Wade reported to work on March 11, 2011, but began experiencing chest pain. Putnam County EMS was called, and Mr. Wade was able to meet them at the ambulance. Mr. Wade was placed on a cot inside the ambulance, at which time he went into ventricular fibrillation. EMS defibrillated Mr. Wade and he subsequently regained consciousness. EMS transported Mr. Wade to CAMC Teas Valley. After arrival, he again experienced chest pain and his heart again went into ventricular fibrillation. Personnel attempted to administer treatment, but decided that Mr. Wade should be transferred to St. Mary's Hospital for a cardiac catheterization procedure. Efforts to treat Mr. Wade at St. Mary's were unsuccessful and he passed away that day. West Virginia's Office of the Chief Medical Examiner subsequently performed an autopsy and found that Mr. Wade had experienced sudden cardiac death due to arteriosclerotic coronary artery disease.

In addition to reviewing the medical records of his care and treatment, the Court heard testimony from three witnesses: Nurse Wright; Plaintiff's expert, Dr. Dan Fintel; and Defendant's expert, Dr. Raymond Magorien. Nurse Wright testified, based on her recollection, as to a great many specific questions and answers in her treatment of Mr. Wade than one might infer from the chart. Some of the details she provided in her testimony substantially elaborate many of the key entries in the chart. The experts agreed that, to determine whether Nurse Wright met the standard of care for a nurse in these circumstances, the Court must decide a fundamental issue of fact, i.e., whether Nurse Wade asked sufficient questions concerning Mr. Wade's chest pain to determine whether he had a recent or different specific experience of chest pain,

particularly such as that which may have occurred at his home two days before this exam. Each expert, and even Nurse Wright, agreed that a report of recent or different significant chest pain, like what he experienced on March 8, 2010, would require any primary-care medical provider to direct the patient to an emergency room for more immediate, thorough assessment and monitoring. Since the medical chart does not note this recent occurrence of chest pain, and only discusses a general, nonspecific history of chest pain without substantial details, Plaintiff asserts that Nurse Wright failed to obtain an adequate history, such that she missed eliciting from Mr. Wade this critical fact. It is the adequacy of her care in obtaining this history that is the material fact in dispute as to liability.

The Court finds as a conclusion of fact that Nurse Wright met the standard of care and did not learn of Mr. Wade's recent chest pain event, leading her to conclude reasonably that immediate referral to an emergency room was not called for under the circumstances. First, the Court concludes that Mr. Wade did not inform the clinic staff, Nurses Shortt, Hurn, or Wright, that he had suffered the chest pain occurrence two days before. There was no mention of it when he called in to schedule an appointment, as the chart for that call clearly reflects Mr. Wade's responses to a series of questions aimed at determining why he wanted to see a doctor. He brought up only his hand and arm numbness, and described it as likely the result of his work. Next, when he presented to Nurse Hurn at the clinic, he did identify chest pain at times as a concern but he reported none at the time and did not mention any recent episode. Similarly, when examined by Nurse Wright, Mr. Wade was asked to describe his chest pain. Her note reflects that he was asked to provide a description of the pain, its frequency, location and history. His responses were summarized by Nurse Wright in the chart, using lexicon typically found in

medical charts, when she noted "episodic", "non-radiating" "pain behind the sternum." She also used the term "episodic" for his history of numbness in his hands, which is consistent with the way he described that complaint, indicative of the lack of specificity he was able to provide in giving his history. She must have asked about the duration of these symptoms, as he then explained that they were ongoing over the last three years and that he had been evaluated at that time. He associated his chest pain with stress. With charting this level of accurate detail, albeit without discovering his recent occurrence of chest pain, Nurse Wright met the standard of care in obtaining and considering his history of chest pain. While Nurse Wright was a credible witness, the Court does not rely significantly on her more detailed description of the examination in her testimony. Defense counsel elicited little explanation as to how she could recall so much from what was, at that time, a relatively brief and uneventful exam. She may well have an explanation that would have bolstered her credibility in recalling so much more than was in the medical record. Even so, the Court is convinced from her demeanor and the medical record that she followed an informed and adequate protocol to obtain the history that led to her judgment as to the course of treatment. She met the standard of care.

One can only speculate why it was that Mr. Wade did not specifically bring up his discomfort two days earlier, which prompted his call for an appointment. Knowing what would happen just a few days later magnifies the importance of that occurrence and makes it difficult to accept that he did not report it to the nurses, especially if he was asked the appropriate questions. But three nurses discussed with him his history of chest pain, and none learned about it. The significance of recent or different chest pain was well understood by Nurse Wright, and there is no evidence that she was so informed but ignored it. Given the chart she completed at the time of

examination, she questioned her patient sufficiently. Whether he simply did not consider it at the time, or did not want to believe he had a heart problem and so chose to avoid discussing it, will never be known. But the evidence does not support Plaintiff's claim that Nurse Wright failed to meet the standard of care.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 20, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE